1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

SUZANNE M. BEAMISH,

11

Plaintiff,

No.  C06-213Z

12

v.

ORDER

13
14
15
16

THE HARTFORD/THE HARTFORD
FINANCIAL SERVICES GROUP, INC., and
their subsidiary, CNA GROUP LIFE
ASSURANCE COMPANY, a Foreign
Corporation; and GREENPOINT
TECHNOLOGIES, INC., a Washington
Corporation,

17

Defendants.

18
19
20
21
22

    This matter comes before the Court on Defendants' Motion for Summary Judgment,
docket no. 14.  The Court has reviewed the briefs and records filed herein, and being fully
advised, now enters the following Order GRANTING Defendant's Motion for Summary
Judgment.

23

**BACKGROUND**

24

    1.    **The Terms of the Long Term Disability Plan.**

25
26

    Plaintiff Susan Beamish (Beamish) was formerly employed at Greenpoint
Technologies, Inc. (Greenpoint) as the Senior Director of Finance.  Administrative Record,
docket no. 17, at 00168.  This is a largely sedentary position.  Id. at 00263.  As of March 1,

ORDER   1–

2003, Greenpoint's employees were covered by a long-term disability benefits plan (Plan) insured by CNA Group Life Assurance Company (CNA). Id. at 00001-39. There is no dispute that Beamish was a covered employee under the Plan.

The Plan defines "Disability" as an "*Injury* or *Sickness* which causes physical or mental impairment to such a degree of severity that *You* are: 1) continuously unable to perform the *Material and Substantial Duties* of *Your Regular Employment*; and 2) not *Gainfully Employed*." Administrative Record, at 00012 (emphasis in original). "Material and Substantial Duties" is defined as "the necessary functions of *Your Regular Occupation* which cannot be reasonably omitted or altered." Id. at 00021 (emphasis in original).

The Plan requires claimants to submit proof of disability in order to receive benefits, including "objective medical findings." Id. at 00111. Under the Plan, objective medical findings include "tests, procedures, or clinical examinations standardly accepted in the practice of medicine for *Your* disabling condition(s)." Id. (emphasis in original). Under the Plan, Greenpoint delegated discretion to CNA to determine benefit eligibility and construe the Plan. Id. at 00118 ("With respect to making benefits decisions, the Plan Administrator has delegated sole discretionary authority to CNA Group Life Assurance Company to determine your eligibility for and entitlement to benefits under the Plan and to interpret the terms and provisions of any insurance policy issued in connection with the Plan.").

**2.     Beamish's Medical History.**

After undergoing radiation therapy for breast cancer, Beamish developed recurrent chest pain. Id. at 00278. Beamish was treated with a variety of pain medications and therapy. Id. at 00278-79. On November 3, 2003, Beamish fell on her way to work, injuring her left knee. Id. at 00272. Her chest pain increased subsequent to this accident. Id. at 00279. On December 29, 2003, Beamish applied for short-term disability benefits under the Plan. An examination by Dr. Wesch in January 2003 described normal gait and station, normal strength and tone, stable joints, and a full range of motion with significant pain. Id.

ORDER  2–

at 00186.  On February 13, 2004, CNA approved the claim, retroactive to December 27, 2003.  Id. at 00160.  On March 4, 2004, CNA received Beamish's application for long-term benefits.  Id. at 00091.  During its investigation into her claim, CNA consulted the notes and medical opinions of Beamish's treating physicians, Drs. Wesch and Irving.  Id. at 00088. Beamish complained of serious pain, which Dr. Irving treated with a drug regime.  Id. at 00272.  As of March 2004, Beamish's routine pain medications included Methadone, Oxycodone, Neurontin, Zoloft, Amitriptyline and Tizanidine.  Id. at 00474.  Based on this information, CNA approved Beamish's long term disability claim on April 8, 2004. Administrative Record, at 00088-89.  Dr. Suzanne LaCross, a psychologist, began seeing Beamish in March 2004 to treat her depression arising from her chronic pain and inability to work.

The record also reflects that Beamish was seen by Dr. Heather Tagliarino as early as July 2, 2004.  Id. at 00449.  Dr. Tagliarino wrote a letter to Hartford Life and Accident Insurance Company (Hartford)[1] on August 17, 2004, stating that Beamish had been diagnosed with Complex Regional Pain Syndrome, which "markedly impact[ed Beamish's] ability to sit or stand for prolonged periods of time, concentrate, or interact socially."  Id. at 00419.  The letter concluded that it was unlikely Beamish could work in any capacity in the near future.  Id.

Hartford continued to examine Beamish's claims over the next several months. Hartford came to believe that support for Beamish's disability rested entirely on her own subjective complaints to her doctors, and her doctors' subsequent report of those subjective complaints.  Hartford obtained the opinions of two consulting doctors to evaluate Beamish's condition; Dr. David F. Zakin, a psychological consultant, and Dr. Robert Marks, a neurologist.

---

[1] Hartford is the successor company to CNA.  The record does not reflect precisely when, between April 2004 and August 2004, Hartford took over CNA.

ORDER   3–

Dr. Zakin reviewed the submitted medical records of Beamish, an undated summary of interview for mental/nervous claims, a July 28, 2004 letter by Dr. LaCross, and a July 16, 2004 claimant interview. Id. at 00270-74. Although Dr. Zakin attempted to speak with Dr. LaCross, he was unable to do so. Id. at 00275. He concluded that there was insufficient evidence to conclude that Plaintiff was psychologically impaired: "Objective data regarding the claimant's reported psychological impairment is lacking. No psychological testing has been conducted and in his monthly treatment notes, Dr. Irving does not make note of any impairment in attention or concentration." Id. at 00274. Dr. Zakin summarized the conclusions of the treating physicians:

> The records reviewed indicate that treating physicians have found the claimant to be disabled secondary to her experience of complex regional pain syndrome. The records reviewed also indicate that the medications taken for her complex regional pain syndrome . . . may impact her energy level and cognitive state. However, there is no indication in the records reviewed that Ms. Beamish experiences any occupational impairment secondary to her psychological condition.

Id. at 00275. Dr. Zakin came to this conclusion because (1) Beamish's depression began after she left work, (2) restrictions on her activities were due to physical, not psychological, limitations, (3) Dr. LaCross did not formally diagnose Beamish with a psychological impairment, (4) Beamish received therapy biweekly instead of weekly, and (5) Dr. Irving's notes made no mention of any impairment in mentation or cognition. Id. at 00275-76. In sum, Dr. Zakin concluded that "there is no indication that the claimant evidences any occupational impairment secondary to her psychological condition alone." Id. at 00276.

Dr. Marks concluded that the evidence did not show that Beamish was physically impaired:

> There are no objective observations of the patient's mental status or physical abilities impairing her ability to perform her occupation. There is no mention as to why an arrangement at work to possibly reduce stress (deadlines could be relaxed) could not be done . . . . There are complaints of pain by the patient. However, specifically with regard to work there are no objective reports indicating actual physical or cognitive limitations. The claimant apparently is able to go to the AP's and psychologist's offices and there is no report of observation that claimant cannot ambulate normally, use her limbs normally, and communicate normally. Since the question of mentation has been raised, there is not even a mention of other evidence that the drugs have impaired the claimant's ability to function (such as slurred speech or appearing

ORDER  4–

1
2
lethargic, etc.)  Therefore, although there are subjective reports of pain, [I] could not obtain reports of the AP's observation of physical limitations or impairment sufficient to prevent the claimant from performing the duties of her occupation.

3
Administrative Record, at 00283-84.

4  As a result of this investigation, on January 11, 2005, Hartford advised Beamish that

5  her long term disability benefits would cease as of February 7, 2004.  Administrative Record,

6  at 00076-77.  The letter listed the information reviewed by Hartford's consulting physicians

7  and summarized the conclusions of those physicians.  Id.  Specifically, Hartford noted that

8  "with regard to [Beamish's] functional ability to perform [her] regular occupational work

9  activity . . . there are no objective reports that support that [she] present[s] with any physical

10  or cognitive limitations."  Id.  Hartford also noted that "[w]e are not disputing that you have

11  been diagnosed with a condition and have been under treatment for that condition for

12  sometime [sic].  However, medical management in and of itself does not constitute a

13  disabling condition."  Id. at 00077.  Hartford stated that Beamish had the right to appeal, and

14  described the appeal process.  Id.

15  On February 9, 2005, Beamish's attorney, Robert Kelley[2] wrote a letter appealing

16  Hartford's decision to terminate benefits.  Id. at 00383.  The letter took exception, paragraph

17  by paragraph, with Hartford's termination letter.  Id. at 00383-87.  Beamish submitted

18  additional support for her claim to Hartford.  On February 28, 2005, Dr. LaCross submitted a

19  letter to Hartford.  Id. at 00353.  The letter stated that Beamish had undergone a complete

20  psychological evaluation and testing.  Id.  It was Dr. LaCross' position that Beamish's

21  inability to work at a competitive pace due to pain and medication made her unable to hold a

22  job, as both "her task persistence and competitive pace are currently limited to one hour or

23  less a day."  Id.  Dr. LaCross also stated that Beamish suffered from cognitive problems due

24

25
26
[2] Kelley, an attorney with Oseran, Hahn, Springs & Watts, P.S., apparently represented both Beamish and Greenpoint.  See Administrative Record, at 00383 ("Ms. Beamish and Greenpoint Technologies, Inc. (the policy holder) both directly and through this office submit the following as her appeal to the decision terminating her disability benefits as outlined in your letter.").

ORDER   5–

1  to a combination of medication, chronic pain, and depression.  Id.  Although Dr. LaCross

2  believed that treatment had helped Beamish cope with depression and pain, she did not

3  believe that Beamish could return to employment in any capacity.  Id.  Finally, Dr. LaCross

4  felt that the focus of the Hartford psychological consultant she spoke with "the past week"

5  had an improperly "narrow" focus on whether depression, standing alone, disabled Beamish.

6  Id.  Finally, Dr. LaCross concluded that Beamish "is currently disabled by her pain,

7  depression, medication, and the variability of her condition."  Id.

8        Dr. Irving submitted a letter to Hartford on March 21, 2005.  Id. at 00350-51.  Dr.

9  Irving stated that Beamish had been disabled from November 2003 to the present by "a

10  particularly difficult diskogenic and neuropathic pain syndrome. . . ."  Id. at 00350.  All

11  treatments had failed to reduce Beamish's "intractable" pain.  Id.  Dr. Irving also maintained

12  that Beamish's pain precluded her from activities exposing her to stress, pressure, social

13  contact, or concentration for more than a few minutes.  Id.  Dr. Irving felt that comments in

14  his notes that Beamish presented without physical or cognitive limitations, and could move

15  and communicate normally were "taken out of context" by Hartford's reviewing physicians.

16  Id.  According to Dr. Irving, Beamish experiences "severe piercing pain throughout her right

17  chest wall and thoracic spine, with unremitting throbbing pain twenty-four hours daily, seven

18  days per week even with medication."  Id. at 00351.  Dr. Irving concluded that Beamish was

19  unable to perform any job, and was disabled.  Id.  Dr. Irving also noted that both he and Dr.

20  LaCross concurred that Beamish's complaints of pain and depression were genuine.  Id. at

21  00351.

22        Hartford then conducted a review of Beamish's additional support for her claim.

23  Hartford retained the services of Dr. Andrea Wagner, Board Certified in Physical Medicine

24  and Rehabilitation and Dr. Milton Jay, a Neuropsychologist.  Id. at 00169.  Dr. Jay and Dr.

25  Wagner did not speak with or physically examine Beamish.

26        On July 28, 2005, Dr. Jay spoke with Dr. LaCross.  Id. at 00179.  According to Dr.

Jay, Dr. LaCross acknowledged that she had seen no episodes of cognitive impairment.  Id.

ORDER   6–

at 00183.  Additionally, Dr. LaCross had conducted no cognitive testing regarding Beamish's complaints of cognitive difficulties.  Id.  Dr. LaCross opined that Beamish was not psychologically disabled.  Id.  As a result, Dr. Jay "saw insufficient objective data to support that depression ever provided a serious burden to this woman's occupational capacity at 1/31/05, prior, or since."  Id. at 00181.

Dr. Wagner reviewed Beamish's record to determine whether Beamish suffered from a physical disability.  Id. at 00185-199.  In addition to reviewing medical records and correspondence from Beamish's treating physicians, Dr. Wagner spoke with Dr. Irving on June 30, 2005.  Id. at 00195.  In Dr. Wagner's opinion, Beamish's record was notable for the lack of both "objective evidence of impairment" and "comprehensive physical examination documenting any evidence of any impairment that would require limitations or restrictions upon functionality."  Id. at 00197.  Dr. Wagner also opined that Dr. Irving's assessment was a simple reflection of Beamish's subjective, self-reported complaints, he could provide "absolutely no objective information to support his assessment of Ms. Beamish's functionality," and "Dr. Irving's assessment of disability is completely subjective in nature, without any objective basis."  Id. at 00198-99.

On August 11, 2005, Hartford sent Kelley a letter reaffirming its decision to terminate benefits.  Id. at 00168-71.  The letter listed the materials reviewed, the identity of the reviewing physicians, and the conclusions supporting Hartford's decision to terminate benefits.  Id.  Consistent with the opinions of its reviewing physicians, Hartford stated that there was no objective evidence of impairment.  Id.

Beamish filed suit on February 13, 2006, alleging that Hartford violated ERISA. Complaint, docket no. 1.  On March 6, 2007, Hartford moved for summary judgment. Defendants' Motion and Memorandum for Summary Judgment, docket no. 14.  For the reasons outlined below, Defendant's Motion for Summary Judgment is GRANTED.

ORDER   7–

# DISCUSSION

## 1.    Standard of Review.

When an ERISA plan vests its plan administrator with the discretionary authority to determine benefit eligibility, courts review a decision to deny coverage for abuse of discretion.  See Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).  A plan must unambiguously provide discretion to the plan administrator, or else the default standard of review is de novo.  Kierney v. Standard Ins. Co., 175 F.3d 1084, 1089-90 (9th Cir. 1999) (en banc).  Where a plan administrator has discretion, a motion for summary judgment merely provides the "conduit" for bringing the issue before the court, and the usual tests of summary judgment do not apply.  Bendixen, 185 F.3d at 942.  It is primarily the job of plan administrators—not courts—to evaluate a claimant's eligibility for benefits:

> When [courts] review for abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts, so [courts] cannot substitute [their] judgment for the plan administrator.  [Courts] can set aside the administrator's discretionary determination only when it is arbitrary and capricious . . . . [A] decision grounded on *any* reasonable basis is not arbitrary and capricious and . . . in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be clearly erroneous.

Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004) (internal quotations omitted).

ERISA plan administrators abuse their discretion by "render[ing] decisions without any explanation . . . constru[ing] provisions of the plan in a way that conflicts with the plain language of the plan . . . or 'rel[ying] on clearly erroneous findings of fact in making a benefit determination.'"  Bendixen, 185 F.3d at 944 (quoting Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469, 1473 (9th Cir. 1993)).  Administrators need not accord special weight to the opinions of a claimant's treating physician.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  In addition, courts cannot impose "a discrete burden of explanation when [plan administrators] credit reliable evidence that conflicts with a treating physician's evaluation."  Id.  In sum, "[w]here there is relevant evidence in the administrative record that reasonable minds might accept as adequate to support a conclusion, even if it is possible to

ORDER  8–

1  draw two inconsistent conclusions from the evidence, the administrator's decision must be

2  allowed to control." LaPrease v. Unum Life Ins. Co. of Am., 347 F. Supp. 2d 944, 954

3  (W.D. Wash. 2004) (Zilly, J.)

4       Courts apply the abuse of discretion standard even in the face of egregious conflicts of

5  interest. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006) (overruling

6  in its entirety Atwood v. Newmont Gold Co., 45 F.3d 1317 (9th Cir. 1995)).[3]  An insurer

7  who acts as both the plan administrator and the funding source for benefits operates under a

8  structural conflict of interest. Id.  When faced with a conflict of interest, courts must

9  consider the conflict as a factor in abuse of discretion review, considering all the facts and

10  circumstances to determine the plausibility of the plan administrator's reason for denying

11  coverage. Id. at 968-69.  In general, a court can view technical conflicts of interest

12  unaccompanied by evidence of something more with a low level of skepticism. Id. at 968.  A

13  court may view with greater skepticism a benefits denial by an administrator with a conflict

14  of interest accompanied by shifting explanations for denial, evidence of malice, self-dealing,

15  failure to adequately investigate or ask the plaintiff for necessary evidence, or failure to

16  credit a claimant's reliable evidence. Id.

17       The parties do not dispute that Ms. Beamish's plan is an ERISA plan pursuant to 29

18  U.S.C. § 1002(1).  The parties also agree that the plan delegated discretionary authority to

19  Hartford to determine eligibility for benefits and construe the terms of the Plan.  Hartford

20

21       [3] Under the Atwood framework, a plan participant first had to show a substantial conflict
of interest on the part of the plan administrator.  Atwood, 45 F.3d at 1323.  If the plan
22  participant did so, the burden shifted to the administrator to demonstrate that the conflict of
interest did not affect the decision to deny benefits. Id.  If the administrator failed to do so, the
23  court would review the decision to deny benefits de novo, rather than for abuse of discretion.
Id.  The Abatie court overruled Atwood for three reasons.  First, Atwood failed to abide by
24  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), which plainly held that courts
must review denial of benefits under ERISA plans granting discretion to administrators for
25  abuse of discretion. Abatie, 458 F.3d at 966.  Second, the Atwood approach did not follow
Firestone's mandate that courts must weigh as a factor conflicts of interest under the abuse of
26  discretion standard. Id. at 966-67 (citing Firestone, 489 U.S. at 110-13).  Third, Atwood placed
the burden of coming forward with evidence of the administrator's motivations on plan
participants, although such information lay in the administrator's possession. Id. at 967.

ORDER  9–

1   concedes that it possesses a structural conflict of interest because it served as both the plan

2   administrator and source of funding.  Hartford also does not dispute that Beamish has a

3   medical condition for which she has received treatment.  Administrative Record, at 00077.

4   Thus, the issues before the Court are (1) the weight that the Court should give Hartford's

5   conflict of interest in conducting its abuse of discretion analysis, and (2) whether Hartford

6   abused its discretion by denying Beamish's eligibility under the Plan.

7               **2.      Evaluating Hartford's Conflict of Interest.**

8        Beamish raises multiple, ill-defined bases for applying a heightened degree of

9   skepticism for the Court's abuse of discretion review.[4]  Beamish first argues that "it is

10  somewhat disconcerting" that Robert Kelley, the attorney who initially represented Beamish,

11  also represented Greenpoint, the plan administrator.  Plaintiff's Response, at 16.  Due to this

12  conflict, Beamish suggests that the Court either apply greater scrutiny to Hartford's denial,

13  allow the administrative record to be reopened to submit additional evidence, or issue an

14  order staying further proceedings pending discovery.  While Mr. Kelley's dual role has been

15  raised, nothing suggests that Mr. Kelley was less than zealous in his representation of

16  Beamish.  See e.g., Administrative Record, at 00344 (letter from Kelley stating "Hartford's

17  continuing disregard of Ms. Beamish's medical information has now reached litigitable [sic]

18  levels. . . .").

19       Beamish also objects to Hartford's alleged failures to (1) follow the policy provisions

20  defining disability, (2) give credence to Beamish's treating physicians, (3) describe the

21  manner of objective medical evidence Hartford sought, and (4) conduct an in-person medical

22  examination of Beamish.  Beamish adduces scant evidence to support these claims.  The Plan

23  does require proof of disability, including "objective medical findings."  Administrative

24  _____

25       [4] Plaintiff misunderstands Abatie, arguing in the alternative that the court should conduct
     a de novo review of Hartford's denial of benefits.  Plaintiff's Response, at 16.  Plaintiff also
     suggests that the standard of review for summary judgment is no different in ERISA cases.
26   Id. at 11.  However, the usual tests of summary judgment do not apply when a court reviews
     an ERISA plan administrator's discretionary denial of benefits.  Bendixen, 185 F.3d at 942.

ORDER   10–

1    Record, at 00111.  Hartford did clearly communicate that Beamish presented no objective

2    evidence that any "physical or cognitive limitations" impaired her functional ability to

3    perform her regular occupational duties.  Id. at 00076.  A plan administrator need not

4    conduct an in-person examination of the claimant.  Tuttle v. Standard Ins. Co., 459 F. Supp.

5    2d 1063, 1067 (W.D. Wash. 2006) (Burgess, J.).

6         In sum, while Hartford possesses a structural conflict of interest, there is little to

7    suggest that Hartford's decision to deny Beamish's claim was motivated by that conflict of

8    interest.  The Court views Hartford's decision with a low level of skepticism.  See Abatie,

9    458 F.3d at 968.

10        **3.    Hartford did not abuse its discretion by denying Beamish's claim.**

11        Hartford did not abuse its discretion by denying Beamish long-term disability

12   benefits.  Hartford had a conflicted record before it.  Evidence in the record pointed both

13   toward and against a finding of disability.  Hartford considered the evidence in full and came

14   to a reasonable conclusion.

15        Beamish's treating physicians firmly and repeatedly maintained that she was disabled,

16   and specifically tied their diagnoses to Beamish's purported disability.  See e.g.,

17   Administrative Record, at 00353 (letter from Dr. LaCross stating that Beamish could not

18   hold a job because her pain and medication limited her task persistence and competitive pace

19   to one hour a day or less).  Hartford considered the observations of the four physicians who

20   personally examined Beamish.  A plan administrator cannot "arbitrarily refuse to credit a

21   claimant's reliable evidence, including the opinions of a treating physician."  Black &

22   Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003).  Drs. Wesch, Tagliarino, Irving,

23   and LaCross all physically examined Beamish.  See Neumann v. Prudential Ins. Co. of Am.,

24   367 F. Supp. 2d. 969, 990 (2005) ("[E]xamining experts may be more persuasive than those

25   who merely review a paper record.").  All of Beamish's treating physicians opined that she

26   was disabled.

ORDER   11–

1       However, a plan administrator does not need to give special consideration to the

2   opinion of a treating physician over a reviewing physician.  Black & Decker, 538 U.S. at

3   834.  Each of the four consulting physicians retained by Hartford concluded that there was

4   no objective evidence that Beamish was impaired.  These opinions were rendered after an

5   extensive analysis of the record.  Further, it was these consultants' opinion that the

6   conclusions of the treating physicians were entirely premised on Beamish's self-reported

7   pain.  Drs. Jay and Wagner both actually spoke with Beamish's treating physicians.

8   Administrative Record, at 00179, 00195.  As a result of these conversations, both concluded

9   that the treating physicians had not personally witnessed Beamish's purported impairment,

10  and that their belief of Beamish's impairment was entirely premised on Beamish's self-

11  reporting.  Id. at 00183, 00198.

12      Beamish does not suggest that Hartford's consultants were biased or unqualified.

13  Thus, Hartford could reasonably rely on the consultants' opinions, which specifically

14  addressed and dismissed the conclusions of Beamish's treating physicians.  See Tuttle, 459

15  F. Supp. 2d at 1072 ("Far from giving selective consideration or mischaracterizing the

16  medical evidence, Standard thoroughly reviewed the evidence, sought additional evidence,

17  and explained its conclusions to Tuttle.  Standard was not required to give special weight to

18  Tuttle's treating physicians, particularly where their opinions were mere unsupported

19  conclusions."); Riffey v. Hewlett-Packard Co. Disability Plan, No. CIV. S-05-1331, 2007

20  WL 946200, at *16 (E.D. Cal. March 27, 2007) (granting Defendant's motion for summary

21  judgment where plaintiff complaining of neck and back pain, headaches, and depression

22  following surgery "continue[d] to rely on her subjective complaints of pain to support her

23  claim for long-term disability benefits, and . . . [did] not identif[y] any objective medical

24  evidence that she [was] totally disabled as defined by the Plan."); Nolan v. Heald College,

25  No. C05-3399, 2007 WL 878946, at *10 (N.D. Cal. March 27, 2007) (insurer reasonably

26  relied on its experts' opinions that insufficient objective medical evidence supported claim

    for long-term benefits).

ORDER   12–

1        Jordan v. Northrop Grumman Welfare Benefit Plan, 370 F.3d 869, 876-77 (9th Cir.

2   2004) is instructive.  In Jordan, plaintiff claimed that the insurer arbitrarily demanded

3   objective proof of fibromyalgia, which cannot be objectively proved to exist.  Id. at 877.  The

4   Ninth Circuit rejected this contention, noting that the administrator asked for objective

5   evidence, not of the existence of the condition, but of a disability preventing plaintiff from

6   working.  Id.  Plaintiff's doctors had merely submitted "conclusory findings of disability."

7   Id.  Further, the record showed that the plaintiff was "in no acute distress" and was "freely

8   ambulatory."  Id. at 880.  Further, plaintiff reported engaging in activities such as doing

9   laundry, grocery shopping, and cooking that cut against a finding of severe pain.  Id.

10       Likewise, in LaPrease, the Court considered a claimant who complained of severe

11  back pain.  LaPrease, 347 F. Supp. 2d at 946-47.  LaPrease's treating physicians concluded

12  that he was permanently disabled, and noted that he was taking 300 mg of methadone a day.

13  Id. at 947.  Upon denial of his claim, LaPrease submitted a form prepared by another doctor,

14  who, on the basis of LaPrease's self-report and "a clinical exam," concluded that LaPrease

15  had zero functional capacity.  Id. at 948.  The insurer's reviewing physician concluded that

16  the treating physician's diagnosis of total disability was based on LaPrease's self-reporting

17  and not on physical or neurological testing.  Id.  The Court concluded that the insurer did not

18  abuse its discretion by denying LaPrease benefits.  Specifically, the Court found that the

19  insurer's reviewing physicians did not disagree with the treating physicians' diagnosis, but

20  simply found that there was insufficient evidence to support their conclusions that the

21  claimant was disabled.  Id. at 955.

22       As in Jordan, evidence in the record suggested that Beamish's pain did not impair her

23  near the degree suggested by Beamish's doctors.  The record is replete with references to

24  Beamish's full range of ambulatory movement and lack of apparent distress.  Administrative

25  Record, at 00186.  Beamish's doctors consistently found that her cognition and mentation

26  were normal during their examinations.  Id. at 00207-212.  A March 3, 2004 chart note from

Beamish's orthopedic surgeon notes that "[knee] pain is out of proportion to exam @ joint

ORDER   13–

line." Id. at 00481.  In addition, there is evidence that Beamish's doctors were unaware of the full scope of activities, such as Beamish's pursuit of a Doctor's degree in Administrative Management and her antiquing on the weekends.  Id. at 00183-84.  As in LaPrease, Hartford did not disagree with the diagnosis of Beamish's treating physicians, but found that insufficient evidence supported Beamish's claim of disability.

Thus, although there is considerable evidence in the record before Hartford that supports Beamish's claim of disability, there is also "relevant evidence in the administrative record that reasonable minds might accept as adequate to support [a finding of no disability]."  LaPrease, 347 F. Supp. 2d at 954.  Because it "is possible to draw two inconsistent conclusions from the evidence, the administrator's decision must be allowed to control."  Id.  Here, as in LaPrease, Hartford reasonably relied on the opinions of its reviewing physicians, communicated fully with Beamish, and reasonably construed the terms of the Plan.  The Court holds that Hartford did not abuse its discretion by denying Beamish's claim for long-term disability benefits.

## CONCLUSION

Because Hartford did not arbitrarily and capriciously deny Beamish's claim for long term disability benefits, the Court GRANTS Defendants' Motion for Summary Judgment, docket no. 14.

IT IS SO ORDERED.

DATED this 1st day of May, 2007.

Thomas S. Zilly
United States District Judge

ORDER   14–